Spear, J.
The record presents this question: Must a deed of assignment embracing land of the assignor situate in a county of this state other than that of his residence, be recorded in the recorder’s office in such other county in order to make it effective against a subsequent bona fide purchaser, having, at the time of the purchase, no knowledge of the existence of the deed of assignment; or does the assignment, upon being delivered to the probate judge of the county of the residence of the assignor, take effect as to land lying in another county so as to be notice to subsequent bona fide purchasers?
It is apparent that the determination of the question involves a comparison of the statutes of the state, upon the subjects of registration and assignments, and an examination of decisions bearing upon those statutes.
The importance of a system of tracing titles was recognized by our law-makers at an early day. In *400 the year 1803 the legislature passed an act (10. L., 136) entitled, “An act providing for the recording of deeds, mortgages and other conveyances of land,” by which the office of county recorder was established, and his duties defined, among which were the duty to procure proper books and record therein all deeds, mortgages and conveyances of lands and tenements lying within the county; to endorse on each instrument received the time when so entered for record; to record such instruments in regular succession according to the priority of receipt of same, and when recorded, to endorse thereon the time when, and the number and page of the book where recorded. A penalty was prescribed for neglect or refusal to perform any duty so enjoined, or for fraudulently endorsing a different date than that on which the instrument was received or recorded. Like provision as to duties has been continued in our statutes until the present time. In 1831 (29 O. L., 346), an act was passed respecting the proof, acknowledgment and recording of deeds, etc., which provided that mortgages executed agreeably to the provisions of the act should be recorded in the county in which the mortgaged premises are situate, and shall take effect from the time when recorded, and that where two or more mortgages were presented for record on the same day they shall take effect from the order of presentation for record. Also that all other deeds and instruments, of writing for the conveyance or encumbrance of land shall be so recorded within six months, and if not so recorded within the time shall be deemed fraudulent as to subsequent tona fide purchasers having at the time of making the purchase no knowledge of the existence of the former deed, but that such deed, etc., may be recorded after the time named, and from the date of such record shall be notice to subsequent *401 purchasers, and these provisions have been continued and remain in force, save that the time of delivery to the recorder for record is substituted for the time of actual record (section 4133, Revised Statutes), and that as to all other deeds, etc., the provision is that, “All other deeds and instruments of writing for the conveyance or encumbrance of any lands, tenements or hereditaments executed agreeably to the provisions of this chapter, shall be recorded'in-the office of the recorder of the county in which the premises are situate, and, until so recorded, or filed for record, the same shall be deemed fraudulent so far as relates to a subsequent bona fide purchaser having at the time of the purchase no knowledge of the existence of such former deed or instrument.” (Section 4134).
The first act regulating the mode of administering assignments in trust for the benefit of creditors was passed April 6, 1859, (56 O. L., 231). By the first section it was made the duty of the trustee, within ten days after the delivery of the assignment to him and before disposing of any property so assigned, to cause the assignment, or a copy, to be filed in the probate court and enter into an undertaking, with surety, for the faithful perfomance of his duties. The second section provides for the removal of the assignee upon his failure to comply with the requirements of the first section and the appointment of another, and gives the court authority to make the appointment effective by proper order. Subsequent sections provide for further duties of the assignee and for a full disposition of the trust estate. An amendment to section 1 was made by the act of March 16,1860 (57 O. L., 39), by which the mode of recovery on the bond for misconduct or neglect on the *402 part of the assignee was defined, and the liability somewhat enlarged, but no other change was made in the section. And thus the section appears to have remained until the codification of 1880, when it was amended and became section 6335, Revised Statutes, as it is now, viz.: “When any person, partnership, association or corporation, shall make an assignment to a trustee of any property, money, rights or credits, in trust, for the benefit of creditors, its shall be the duty of said assignee, within ten days after the delivery of the assignment to him, and before disposing of any property so assigned, to appear before the probate judge of the county in which the assignor resided at the time of executing the said assignment, produce the original assignment, or a copy thereof, cause the same to be filed in the probate court, and enter into a bond, payable to the state, in such sum and with such sureties as shall be approved by the court, conditioned for the faithful performance, by said, assignee, of his duties according to law; and the court may require the assignee, or any trustee subsequently appointed, to execute an additional undertaking whenever the interests of the creditors of the assignor demand the same; any such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be endorsed thereon by the probate judge, who shall immediately note the filing on the journal of the court; and it may be delivered by the assignor to the probate judge either before or after its delivery to the assignee.”
In support of the conclusion of the circuit court the proposition is urged that section 4134 does not apply to deeds of assignment executed by residents of this state because of the special provisions of the section above quoted, and there being, therefore, no require *403 ment that such deeds shall be recorded in the county Avhere the land is situate, such record would not be constructive notice.
Manifestly this claim must rest upon the ground either that the enactment of the assignment statute répeals pro tanto section 4134, or that it takes out of the scope of that section deeds of assignment and places them entirely in a category by themselves. Probably no different principle applies whichever form the claim assumes.
It is to be borne in mind that the conveyance does not cease to be a deed simply because it is an assignment. It conveys the land because it is a deed, and would fail to convey the land if it lacked the requisites of a deed. Kingman v. Loyer, 40 Ohio St., 109. So the proposition, reduced to the concrete, is, that the later act makes a different rule with respect to notice as to some deeds from that which applies to other deeds. Put in different form, the proposition is this: A purchaser of land situate in a county of this state other than that of the residence of the grantor, who has paid full value for it and received a conveyance, must, by force of section 4134, forthwith file the deed for record with the recorder of the county where the land is situate, or take the risk of having his deed deemed fraudulent and of losing the land in case a subsequent purchaser from the same grantor, who is without knowledge of the former deed and has relied on the title as shown by the public records, first files his deed for record; but if the grantee .happens to be an assignee, voluntarily selected by the debtor to subject the land to sale and apply the proceeds to the payment of debts already accrued, debts founded upon past considerations, then, by force of section 6335, his duty is only to hand the deed to the probate judge of the county where the debtor resides, and *404 any subsequent purchaser, though one for full value who is in fact ignorant of the existence of the deed to the assignee, and who has relied upon the public record in the county where the land is situate, must lose his purchase.
There is found in the statute no express words making such change. If it obtains it must arise upon implication, and in all cases where a change results in a radical departure from the previous rule on the subject, the implication leading to it should be clear and distinct. It is, in effect, a repeal. The pertinent rule of construction with respect to repeals, well established and, we suppose, of universal application, is that repeals by implication are not favored. The presumption is that laws are passed with deliberation and with knowledge of all existing ones on the subject. Therefore acts upon the same subject are to be construed as a whole with reference to an entire system of which all are parts. The presumption being against indirect repeal, the courts will endeavor to harmonize the several parts, and where the statute has made no exception the courts will make none, nor where exceptions, are made will they be carried further, in the absence of direct language, than the spirit of the law requires. An enlarged meaning, beyond the import of the words, will not be given to one act in order to repeal another by implication. State v. Dudley, 1 Ohio St., 457; Cass v. Dillon, 2 Ohio St., 607; Bowen v. Lease, 5 Hill, 221. It is not sufficient that the subsequent statute covers some of the cases provided for by the former; there must be positive repugnancy; and even then the old is repealed only to the extent of the repugnancy. If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in har *405 mony, and without absurdity, both will be upheld, and the later one will not be regarded as repealing the former by construction or intendment. Sutherland on Stat. Con., 152; 23 Am. & Eng. Ency. of Law, 489; People v. Gustin, 57 Mich., 407; Plum v. Lugar, 49 N. J. L., 557.
That it has been the purpose of our law-makers to create a system of registration of deeds of land within each county, which will show the true condition of title to all lands therein, or at least establish that the apparent owner of. record is to be considered the true owner; and that upon the records so made innocent bona fide purchasers may rely, and be justified in acting upon the information thus acquired as true, the acts to which attention has been called and the decisions of our courts giving construction to them, abundantly attest. The opinion of this court as to the importance of such a system and its great value in facilitating the business of our communities in their every-day transactions, is sufficiently expressed in the case of Coe v. Erb, 59 Ohio St., 259, and need not here be repeated. However, in addition to the statutory provisions there referred to, and to those hereinbefore cited, there may be added, as further showing the purpose above indicated, the provision as to the recording of wills. It is by section 5932, required that where real estate devised by will is situate in any other county than that in which the will is proved, an authenticated copy of the will and order of probate shall be admitted to record in the office of the probate judge of each county in which such real estate may be situate. Also, the provision (section 1212), that each sheriff shall keep a foreign execution docket, in which all levies upon lands in the county of executions received from other counties Shall be entered and recorded, with proper in *406 dexes, and such entries shall be notice to subsequent purchasers and creditors of the matter therein contained.
Is it reasonable to conclude that the legislature, after establishing such a comprehensive system of registration, applicable by its terms to all conveyances, a.nd affording in each county notice of conveyances affecting lands within the county, and liens thereon authorized by the laws of the state, should intend, by indirection, to take out from the operation of the rule as to notice in force for over fifty years, deeds of assignment, thereby making it necessary, before one can safely purchase land, to search the records of every county in which the vendor may have resided to ascertain whether, perchance, there may not have been at some time in the past, an assignment for the benefit of creditors, and resulting in abrogating a 'principle of law, universally recognized as a general rule, that a court can exercise no extra-territorial jurisdiction, and that its decrees, therefore, can have no direct force as to lands outside the limits of the territory in which the court is held? It would, we think, be expected that a change so* radical and sweeping should be indicated by an express declaration to that effect.
We are, of course, required to give force and meaning to the amendment of the assignment statute made in 1880, and in order to ascertain the scope of it we must look to the law as it stood before. By that no time was fixed for the taking effect of the assignment. It was, therefore, governed in that respect by the general rule, and, as held in Johnson v. Sharp, 31 Ohio St., 611, would take effect as a deed at the time of its delivery, a rule which involved uncertainty and gave rise to abundant contention. This holding, and the many inconveniences incident to practice under the *407 rule, were fully understood by the codifiers, and the purpose to change the rule and prescribe another and more clearly-defined test, is plainly manifest in the language of the amendment, viz.: “Any such assignment shall take effect only from the time of its delivery to the probate judge,” followed by the requirement that “the exact time of such delivery shall be endorsed thereon by the probate judge, who shall note the filing on the journal of the court.” A further provision is that the deed “may be delivered by the assignor to the probate judge either before or after its delivery to the assignee.” All of which clearly shows that the prominent idea is to fix a time and method, and to settle that delivery is complete by handing to the probate judge, without reference to the presence or act either of the grantee or the joint act of grantor and grantee, and is a further expression of the legislative purpose to provide a uniform, easily understood system of registration. As held in Betz v. Snyder, 48 Ohio St., 492, the filing of the deed with the probate judge and its record in his office takes the place of the requirement to deliver to the recorder of the county for record in his office, and the case is authority to the point that, respecting lands within the county, no further filing or record is necessary. To this extent, therefore, the later statute may be held to make an exception as to deeds of assignment (there remaining adequate provision for record notice of the title in a proper office at the county seat), but there appears no sufficient reason, and certainly no necessity, for the conclusion that the purpose was to carry the exception to the extent of entirely abrogating section 4134, as applied to deeds of assignment. Neither the original assignment statute, nor the amendment, undertakes to determine what further must be done in order to make the deed effective as *408 notice with respect to lands lying outside the county where the assignment is filed. For the general purpose of the assignment, and as affecting lands within the county, the amendment makes the delivery to the probate judge conclusive, and the act requires no further record as to such lands, but we deem it reasonable to hold that as to lands lying in other counties of the state the deed of assignment, like all other deeds, must, by force of section 4134, in order to be notice to subsequent bona fide purchasers, be entered for record in the office of the recorder of the county where the premises are situated. This construction, as it seems to us, gives full effect to the language of the assignment statute, including the amendment, without lessening the force of other sections, and leaves the whole body of our statute law on the subject harmonious and consistent.
Nor does the requirement to comply with section 4134 impose hardship or unusual responsibility upon the assignee. It is his duty, in the proper discharge of the trust, to acquaint himself fully with the assigned property, its character and location, and the added labor, with the trifling expense, of having'his deed recorded in all counties where the lands of the assignor may be situate, is small in comparison with the trouble and expense which would be incurred by persons contemplating the purchase of land by inquiries and searches in all counties where the owner may have resided, in order to make it certain beyond peradventure that the apparent title is the real one. And that the effect of imposing such a task upon purchasers could but retard, and make still more difficult, transactions in real estate, is beyond question.
It is not intended to say that the legislature may not, if it will to do so, omit to provide for any notice; or provide for notice as to one class of deeds by a record *409 in one place and by record of another class in another place. Such discrimination is made as to deeds of land from the state, as is shown by the case of Webster v. Clear, 49 Ohio St., 392. A special provision of statute (54 O. L., 160) requires that all deeds of land sold by the state shall be for delivery to the persons entitled to receive them at the office of the auditor of state at the capital; that before delivery they shall be recorded in the office of the secretary of state, and that the auditor of state shall keep a record of such deeds delivered, showing to whom delivered and the date. The complainant in the case above cited (a second purchaser), did not search these records. Had he done so he would have ascertained the true state of the title. He lost the land, but indemnity having been likewise provided by statute for one who purchases land from the state which has been already sold, he was thus made whole. The purpose of making the records at the state capital constitute notice seems apparent, and the provision is adequate to the purpose. Hence this special provision was deemed clearly sufficient to take deeds by the state out of the scope of section 4134. What we do undertake to affirm is that in order to warrant the conclusion that any class is intended to be taken out of the general requirement as to filing and record, that intent must be made definitely to appear.
It is, however, insisted that the case is controlled by that of Betz v. Snyder, supra. But we are of opinion that the holding in that case when properly understood, and the language of syllabus and opinion applied to the facts shown by the record., is not decisive of the case at bar, although at first blush some expressions might create a contrary impression. The question there presented was whether or not a mortgage of real property executed before the execution *410 of the deed of assignment for the benefit of creditors by the mortgagor, but not deposited for record with the recorder until after the deed of assignment had been delivered to the probate judge of the county in which the land was situate, being also the county of the residence of the assignor, created a lien upon the property as against the assignee, or the creditors. It was held that the deed of assignment took effect from the time of its delivery to the probate judge; that it was not necessary to file the instrument for record with the recorder of deeds, and that the mortgage, being filed subsequently with the recorder, did not constitute a lien. The doctrine is clearly correct as to lands within the county, but the holding does not require its application to lands in other counties. To do so would make it necessary to conclude that the filing of the assignment with the probate judge created a Us pendens. The ancient doctrine was that a lis pendens was constructive notice to all the world like a recorded deed, but the later, and it seems to us, the more reasonable doctrine, is that it rests only upon the ground that the law will not allow parties litigant to give to others pending a suit rights to property in dispute so as to prejudice the opposite party, and defeat the execution of the decree which may finally be entered. But the doctrine applies only where the court has jurisdiction over the thing. It is, in short, a rule of public policy, and is not to be extended so as to work injustice. Adams’ Eq., 157; Dovey’s Appeal, 97 Pa. St., 158; Bellamy v. Sabine, 1 DeG. & J., 566. But even if it should be conceded that the old doctrine still prevails, how can it be said that there was a lis pendens? Lis implies a controversy between contending parties. Here no controversy had arisen. Because there was power in the probate court to deal with the subject matter of the assignment when its *411 jurisdiction should be invoked, it does not follow that the mere filing of the assignment with the probate judge was equivalent to the begining of a suit. No process issued; no parties Avere in court. It would, it seems to us, be extending the exercise of construction to an unreasonable length to say that the simple acts of delivering to the judge of the probate court a deed of assignment, the noting by him of such filing-on the journal,.the qualification of the assignee, and the giving of notice by him of his appointment, gives to the probate court power to adjudicate as to title to lands in other counties, thus extending the court’s jurisdiction beyond the borders of the territory within which, for general purposes, its jurisdiction is limited. These duties of the judge partake more of the nature of clerical and ministerial than of judicial acts. Notice by the assignee of his appointment would seem to have no other purpose, as expressed by Burrell in his work on Assignments, section 267, than to apprise creditors of the transfer and to instruct them how to obtain its benefits, and to inform debtors of the assignor, and persons having moneys or property belonging to him to whom they are to account for the same. Doubtless these steps initiate a pending proceeding for some purposes, and for such purposes affect all persons, but they fall far short of creating a Us pendens, and ought not to be held to take the place of the filing of the deed of assignment in the office of the recorder in other counties wherever lands of the assignor are situate, as required by section 4134. This section was intended for the benefit of purchasers; section 6335, for the protection of creditors. Both were designed to secure rights; not to impair or destroy them. They are consistent in their provisions, and may Avell stand together. They are consistent, also with section 5056, Revised Statutes, *412 relating to lis pendens. What rights would have accrued had the assignee taken possession of the Lucas county land, and by proper application for an order, invoked the jurisdiction of the probate court, we need not consider.
Nor is our conclusion inconsistent with Havens v. Horton, 53 Ohio St., 342. That case dealt with lands lying wholly within the county where the assignment was made, and the question was simply as to which of two courts, in that county, the common pleas or the probate, had jurisdiction to decree foreclosure and order sale of the assigned property.
The construction of our statutes herein indicated accords with the construction of the statutes of Pennsylvania upon kindred.subjects in Dougherty v. Darrach, 15 Pa. St., 399, and similar statutes of Indiana in Switzer v. Miller, 58 Ind., 561. It is suggested by counsel for the defendant in error that those statutes differ essentially from ours. They do differ in phraseology, but not, as it seems to us, in purpose and effect.
Our conclusion requires a reversal of the judgment of the circuit court and judgment to be entered here for the plaintiff in error upon the facts found by that court.

'Reversed.